**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WALTER JOHN KUTYBA, | ) | CASE NO. 5:22-CV-00483-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM ORDER & OPINION** |
| | ) | |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Walter John Kutyba ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## II. Procedural History

Claimant filed applications for DIB and SSI on August 16, 2019, alleging a disability onset date of June 15, 2018. (ECF No. 7, PageID #: 42). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 7, PageID #: 42). On March 9, 2021, an ALJ held a telephonic hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 7, PageID #: 42, 65). The ALJ issued a written decision finding Claimant was not disabled on April 1, 2021.

1

(ECF No. 7, PageID #: 39). The ALJ's decision became final on February 3, 2022, when the Appeals Council declined further review. (ECF No. 7, PageID #: 28).

Claimant filed his Complaint to challenge the Commissioner's final decision on March 28, 2022. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 11, 13). Claimant asserts the following assignments of error:

> (1) The appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers. As such, the decision in this case by an ALJ who derived her authority from Andrew Saul was constitutionally defective.

> (2) The ALJ erred when she found that [Claimant] was not disabled based on the testimony of the vocational witness who identified only one job [Claimant] could perform, a job which did not exist in significant numbers in the national economy.

> (3) The ALJ erred when she failed to properly consider [Claimant's] symptoms, including pain, in accordance with Social Security Ruling 16-3.

(ECF No. 10, PageID #: 687).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> At the hearing, the claimant testified that he cannot work primarily due to back pain that prevents him from being on his feet, and the effects of a stroke. He indicated that he is unable to stand for more than 10 minutes without experiencing pain, and he tried various treatment methods such as epidural injections, but they did not help much. According to the claimant, he is currently receiving pain management services, his physician recommended spinal surgery, and his stroke made things worse for him, including affecting his right leg. He further alleged that he occasionally uses a cane, sometimes loses his balance, has no mobility in his right arm, and has a cyst on his left wrist that must be drained. The claimant stated that he can lift five to 10 pounds, but will suffer for the next two days after lifting, has problems with sitting such as being unable to get comfortable, and has trouble with falling and staying asleep at

night. Regarding activities of daily living, the claimant testified that he currently lives with his father and fiancé, and he performed some gardening in the summer, but his fiancé and father did the planting, and has been unable to engage in hobbies such as fishing for the past two years (hearing testimony).

(ECF No. 7, PageID #: 47–48). The ALJ found this testimony inconsistent with the medical record:

> The claimant's allegations are determined to be less than fully consistent with the evidence. The nature and degree of pain and functional limitations alleged by the claimant is not supported by medical and non-medical sources. Diagnostic test results and physical examination findings have been largely unremarkable, and the claimant had a relatively conservative treatment history for his physical health impairments since the alleged onset date, with conservative treatment measures such as epidural injections and pain medications. For example, a physical examination performed in 2020 revealed that the claimant was alert and oriented to all spheres, in no acute distress, his gait was grossly non-antalgic, there was tenderness in the paraspinal muscles, a facet loading test was positive bilaterally, straight leg raise testing was consistent with femoral stretch and L4 dermatome on the left, and he could rise from the seated to standing position without difficulty (Exhibit 16F, pg. 4).
>
> Regarding the consistency of the claimant's mental health allegations, he had a very limited treatment history since the allege[d] onset date, without evidence of psychiatric hospitalization in the record, and told Dr. Haaga that he was not currently taking any psychotropic medications or receiving counseling services, nor was he interested in therapy. Such absence of documentation of ongoing treatment is inconsistent, and it seriously undermines allegations of disabling, or even severe, limitations of function, lasting twelve months in duration, and despite treatment (20 CFR 404.1520(a)(4)(ii) and 404.1509). Additionally, the claimant reported mostly mild to moderate level symptoms during his psychological consultative examination with Dr. Haaga, without evidence of hallucinations, delusions, obsessions, compulsions, cognitive disorder, current suicidal/homicidal ideation, or other serious issues (Exhibit 9F). Thus, there are no indications in the medical record of limitations beyond the performance of light level work with the non-exertional restrictions listed above.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the

> claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(ECF No. 7, PageID #: 49–50).

A vocational expert also testified at the hearing. (ECF No. 7, PageID #: 76–77). She testified that the Claimant was unable to perform past relevant work with the ALJ's suggested Residual Functional Capacity. (ECF No. 7, PageID #: 79). However, the expert noted that Claimant could perform a job as a furniture rental consultant, which has 14,000 jobs in the economy. (ECF No. 7, PageID #: 79).

**B.  Relevant Medical Evidence**

The ALJ also summarized Claimant's health records and symptoms:

> The claimant has a history of obesity, degenerative disc disease and arthritis of the lumbar spine, lumbar neuritis, status post stroke with right hemiparesis, and hypertension. In June of 2020, he presented to Dr. Dallara at University Hospitals for an initial evaluation regarding low back pain that radiated to the bilateral legs, which was worse in the left leg. According to the claimant, his pain involved a sharp, achy sensation, it was made worse by everything, and his pain increased followed a stroke that occurred last year related to right-sided weakness (Exhibit 16F, pg. 1). The claimant rated his current pain level as nine out of 10, and said that his past treatment methods included pain medications, while admitting that he was taking medications received from a friend (Exhibit 16F, pg. 2). A physical examination performed at this time revealed that the claimant was alert and oriented to all spheres, in no acute distress, his gait was grossly non-antalgic, there was tenderness in the paraspinal muscles, a facet loading test was positive bilaterally, straight leg raise testing was consistent with femoral stretch and L4 dermatome on the left, and he could rise from the seated to standing position without difficulty (Exhibit 16F, pg. 4). Based on these findings, Dr. Dallara diagnosed the claimant with lumbosacral back pain, arthritis of the lumbar spine, degenerative disc disease, and neuritis, while advising him to obtain an EMG and spine x-ray (Exhibit 16F, pg. 5). The claimant underwent an EMG study in July of 2020 based on a history of lower back pain radiating down the left thigh. This study was mildly abnormal, showing electrodiagnostic evidence

4

suggestive, but not definitive for a mild left chronic L5 and S1 radiculopathy, with the need for clinical correlation (Exhibit 17F, pg. 10). In September of 2020, the claimant underwent an MRI of the lumbar spine based on a history of lumbar radiculopathy. This study revealed multilevel degenerative changes of the lumbar spine, including marked spinal canal stenosis at the L4/5 level (Exhibit 16F, pg. 6).

As noted above, the claimant also has a history of obesity. Treating notes from University Hospitals taken in June of 2020 list the claimant's body mass index (BMI) at 34.86, consistent with obesity (Exhibit 17F, pg. 4). As indicated in SSR 19-2p, obesity may have an adverse impact upon co-existing impairments. For example, someone with obesity and arthritis may have more pain and limitation than might be expected from arthritis alone. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day or equivalent schedule. The effects of obesity have been considered in this decision, when applicable, at each step of the sequential evaluation, and it has been concluded that, even with this consideration, the claimant is capable of performing a range of light level work.

In addition to the above physical impairments, the claimant has mental impairments including adjustment disorder with mixed anxiety and depressed mood and neurocognitive disorder. In December of 2019, he attended a psychological consultative examination with Dr. Haaga. At this time, the claimant reported that he was applying for disability benefits primarily due to his handicaps that affected his brain, and difficulty handling stress (Exhibit 9F, pg. 1). According to the claimant, he was never formally diagnosed with a mental health impairment, never saw a mental health professional, and was never psychiatrically hospitalized. He indicated that he did not need to see a therapist, and took some medications for anxiety after his stroke, but they were "zombifying" for him (Exhibit 9F, pg. 4). Regarding activities of daily living, the claimant he woke up around noon, spent his days staring at the wall, managed his own finances, was able to drive, and was limited in performing household chores while recovering from his stroke. A mental status examination performed at this time revealed that the claimant had adequate grooming and hygiene, he was cooperative, his interaction with Dr. Haaga was adequate, his speech was 100 percent understandable, and he needed to be redirected at times, but his thought processes were logical, organized, coherent, and rambling. In addition, the claimant appeared to be depressed, with a congruent affect, he described his

5

> sleep as problematic, endorsing onset and interruption insomnia, his psychomotor activity was normal, he denied suicidal ideation, intent, or plan, and there were no motor manifestations of anxiety (Exhibit 9F, pg. 4). Finally, the claimant was alert and oriented to all spheres, there was no evidence of hallucinations or delusions, his attention and concentration were adequate, and he was likely functioning in the average range of intelligence for his age (Exhibit 9F, pg. 5). Based on these findings, Dr. Haaga diagnosed the claimant with adjustment disorder with mixed anxiety and depressed mood, and mild neurocognitive disorder – vascular disease with behavioral disturbance (Exhibit 9F, pg. 6).

(ECF No. 7, PageID #: 48–49).

### C. Relevant Work Evidence

The ALJ summarized her findings related to Claimant's ability to perform another job in the national economy:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a furniture rental consultant (DOT # 295.357- 018, 14,000 jobs nationally). The undersigned finds that the vocational expert identified a significant number of jobs in the national economy.

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. However, the vocational expert's testimony regarding overhead reaching and the use of the hands in the workplace was supplemented by her training and experience in the field. Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

(ECF No. 7, PageID #: 51–52).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

2. The claimant has not engaged in substantial gainful activity since June 15, 2018, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: obesity, degenerative disc disease and arthritis of the lumbar spine, lumbar neuritis, status post stroke with right hemiparesis, hypertension, adjustment disorder with mixed anxiety and depressed mood, and neurocognitive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with occasionally lifting and/or carrying, including upward pulling, up to 20 pounds; frequently lifting and/or carrying, including upward pulling, up to 10 pounds; standing and/or walking, with normal breaks for a total of 6 hours in an 8-hour workday; sitting, with normal breaks, for about 6 hours in an 8-hour workday; pushing and/or pulling, including the operation of hand/foot controls, is unlimited, other than as shown for lifting and/or carrying, except occasional pushing and pulling with the right upper extremity; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling; never climbing ladders ropes, or scaffolds; no workplace hazards, including work around unprotected heights, commercial driving, or operating on or around dangerous machinery; occasional use of the right upper extremity for overhead reaching, handling, and fingering; and he is able to perform simple, routine, tasks in an work environment where 1) there are no tasks that involve high production quotas, or fastpaced production demands, and 2) there are only occasional changes in workplace tasks or duties, with any such changes being gradually introduced and explained in advance.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 7, PageID #: 44, 45, 46–47, 50, 51, 52).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the

8

claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C. Discussion

Claimant raises three issues on appeal. First, he claims the appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers doctrine of the United States Constitution. (ECF No. 10, PageID #: 696). Thus, Claimant argues that the ALJ, who was delegated authority by Commissioner Saul, did not have the power to adjudicate this case. (ECF No. 10, PageID #: 697). Second, Claimant contends that the ALJ erred in failing to allow counsel to question the vocational expert about temperaments related to an alternative job in the economy and incorrectly found that 14,000 positions in the national economy was "significant." (ECF No. 10, PageID #: 701). Third, Claimant alleges the ALJ failed to properly consider his subjective complaints of pain. (ECF No. 10, PageID #: 703).

### 1. Claimant's Separation of Powers Argument Fails

Claimant asserts that "[b]ased on the fact that Andrew Saul's tenure as Commissioner of SSA was unconstitutional, and he was Commissioner at the time of the ALJ and Appeals Council decisions, this matter should be remanded for a *de novo* hearing." (ECF No. 10, PageID #: 699). He argues that because Acting Commissioner Saul was unconstitutionally appointed, the authority he delegated to the ALJ to hear and ultimately determine Claimant's application for disability benefits was also unconstitutional. (*See* ECF No. 10, PageID #: 698). In support of this argument, Claimant cites to *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), for the proposition that Saul's appointment under 42 U.S.C. § 902(a) violates the separation of powers because it limits the President's authority to remove the Commissioner without cause. (*See* ECF No. 10, PageID #: 696). The Commissioner does not dispute that the relevant removal provision "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (ECF No. 11, PageID #: 715 (citations omitted)). Instead, the Commissioner argues that Claimant is not entitled to relief because "even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused him harm." (ECF No. 11, PageID #: 716 (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1787–89 (2021)). Specifically, the Commissioner argues that Claimant cannot show harm to support his claim for relief because the ALJ's appointment was ratified by an Acting Commissioner who was not subject to the challenged removal restriction and because Claimant cannot show that the removal restriction caused the denial of his benefits. (ECF No. 11, PageID #: 718).

Before the Court may address the substance of this argument, the Court must first determine whether Claimant has standing to challenge the alleged unlawful removal provision. The Commissioner does not specifically contest Claimant's standing. However, even if the parties

do not challenge standing, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd*., 556 F.3d 459, 465 (6th Cir. 2009) (citations omitted).

To establish Article III standing, a plaintiff must show that she has suffered an "injury in fact" that is "fairly traceable" to the defendant's conduct and would likely be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations omitted) (citations and internal quotation marks omitted). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant, not to the provision of law that is challenged." *Collins*, 141 S. Ct. at 1779 (internal quotation marks and citation omitted).

In his reply brief, Claimant first argues that he has standing because the Commissioner "failed to proffer any argument" that he lacked standing. (ECF No. 13, PageID #: 747). However, "[a]s a jurisdictional requirement, standing . . . cannot be waived or forfeited." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) (emphasis added). Next, Claimant argues that he has standing as a "a disability claimant who had received an unfavorable decision during the administrative process . . . ." (ECF No. 13, PageID #: 747 (citing *Brinkman v. Kijakazi*, No. 2:21-cv-00528-EJY, 2021 WL 4462897, at *2 (D. Nev. Sept. 9, 2021) and *Sylvia A. v. Kijakazi*, No. 5:21-CV-076-M-BQ, 2021 WL 4692293, at *3 (N.D. Tex. Sept. 13, 2021), *report and recommendation adopted*, No. 5:21-CV-076-M-BQ, 2021 WL 4622528 (N.D. Tex. Oct. 7, 2021))). Contrary to Claimant's argument, in *Brinkman*, the court found that the plaintiff lacked standing to bring the constitutional challenge by failing to "allege facts that support a finding that her injury, the denial of disability benefits, can be or is traced to the conduct of the SSA Commissioner." 2021 WL 4462897, at *2. Citing to *Collins* and *Seila Law*, the court explained:

"Because Plaintiff offers nothing that traces the decision by the ALJ in her case to any alleged injurious conduct by the SSA Commissioner, she has not demonstrated traceability and her constitutional violation claim fails for lack of standing." *Id*. Thus, *Brinkman* does not support Claimant's argument.

In *Sylvia A.*, however, the court found that "[p]laintiff's separation-of-powers claim is both traceable and redressable such that she has standing to pursue it." 2021 WL 4692293, at *4. The court explained that the traceability requirement was met "[b]ecause the ALJ derives authority directly from the Commissioner, and the ALJ's disability determination becomes the Commissioner's final decision." *Id*. at *3. In so finding, the court observed that "'[i]f the removal protections afforded the Commissioner violate the constitutional requirement of separation of powers, the Commissioner has no authority to delegate.'" *Id*. (alteration in original) (citations omitted). *Sylvia A.*'s conclusion, however, directly conflicts with the Supreme Court's conclusion in *Collins* that the unlawfulness of a similar removal provision did not strip the relevant executive officer "of the power to undertake the other responsibilities of his office." 141 S. Ct. at 1788 n.23 (citing *Seila Law*, 140 S. Ct. at 2207–11). Accordingly, this Court does not find *Sylvia A.* to be persuasive. *See Rives v. Comm'r of Soc. Sec.*, No. 1:20-CV-02549, 2022 WL 1076216, at *22 (N.D. Ohio Feb. 4, 2022), *report and recommendation adopted*, No. 1:20CV2549, 2022 WL 681273 (N.D. Ohio Mar. 8, 2022); *Reese v. Comm'r of Soc. Sec.*, No. 5:20-CV-2385, 2022 WL 1090538, at *17 (N.D. Ohio Jan. 31, 2022), *report and recommendation adopted*, No. 5:20CV2385, 2022 WL 831122 (N.D. Ohio Mar. 21, 2022).

The mere receipt of an unfavorable decision is not sufficient to establish harm traceable to the alleged unlawful conduct. The majority of courts having examined this issue have concluded that a party similarly situated to Claimant lacks standing by failing to allege facts supporting that

the denial of disability payments could be traced to the conduct of the Commissioner of the Social Security Administration. *See Walker v. Comm'r of Soc. Sec.*, No. 4:20-CV-02506-CEH, 2022 WL 1266135, at *6 (N.D. Ohio Apr. 28, 2022) (collecting cases).

Therefore, Claimant has failed to show compensable harm connected to the unconstitutional removal provision. Claimant asserts that "based on the fact that Andrew Saul's tenure as Commissioner of SSA was unconstitutional, and he was Commissioner at the time of the ALJ decision, this matter should be remanded for a *de novo* hearing." (ECF No. 10, PageID #: 699). However, "the fact that the removal restriction in § 902(a)(3) is unconstitutional does not entitle [Claimant] to a remand for a new hearing and decision in his case." *Klapp v. Comm'r of Soc. Sec.*, No. 5:20-CV-02850-JDG, 2022 WL 310228, at *15 (N.D. Ohio Feb. 2, 2022). As the Supreme Court in *Collins* explained, "there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office" because the removal restriction was unconstitutional. 141 S. Ct. at 1788.

Claimant argues in his reply brief that he did not receive "constitutionally valid" decisions by the ALJ and that this is his compensable harm. (ECF No. 13, PageID #: 750–51). To the extent Claimant again asserts a challenge to Mr. Saul's delegation authority, this challenge fails under *Collins*, as discussed above.

Claimant also asserts that "[t]he ALJ was delegated the authority by the Commissioner in this matter, which means that her ability to make findings of fact and issue a final decision was constitutionally defective. . . . [t]his means that a presumptively inaccurate legal standard was utilized by the ALJ to adjudicate this claim . . . ." (ECF No. 10, PageID #: 697). But Claimant fails to explain what inaccurate legal standard the ALJ applied to this case. Moreover, Claimant's argument that the Commissioner had no authority to carry out the functions of office because the

removal restriction was unconstitutional was rejected by the Supreme Court in *Collins*. 141 S. Ct. at 1788.

None of Claimant's assertions describe the type of compensable harm stemming from an unconstitutional removal provision that was described in *Collins*. Claimant does not state that when his application was pending the President was unable to remove Saul from office or believed that he was unable to do so. *Collins*, 141 S. Ct. at 1789. In fact, Claimant admits in his reply brief that when President Biden sought advice from DOJ as to whether he could remove Saul as Commissioner, DOJ confirmed that he could. (*See* ECF No. 13, PageID #: 749). President Biden then immediately removed Saul without issue. Without a harm traceable to an unlawful action by the Commissioner, Claimant does not have standing to challenge the constitutionality of § 902(a)(3). *See Rives*, 2022 WL 1076216, at *22–23.

Accordingly, Claimant's constitutional challenge fails because he "has not described compensable harm due to the unconstitutional removal provision in § 902(a)(3) under which Saul served as Social Security Commissioner." *Lynch v. Comm'r of Soc. Sec.*, No. 1:21CV0556-JDG, 2022 WL 614777, at *17 (N.D. Ohio Mar. 2, 2022); *Miley*, 2021 WL 6064754, at *1 ("[Plaintiff] lacks standing to contest the constitutionality of the ALJ's decision based on the president's removal authority.").

The Commissioner also argues that Claimant's request for relief fails under other legal and equitable doctrines, including harmless error, the de facto officer doctrine, the rule of necessity, and broad prudential considerations. (ECF No. 11, PageID #: 716). Because this Court concludes that Claimant does not have standing, and this Court lacks jurisdiction to hear the relevant constitutional arguments, these additional arguments will not be addressed herein.

**2. Substantial Evidence Supports the ALJ's Finding that a Significant Number of Jobs Existed in the National Economy that Claimant Could Work**

Claimant next argues that the ALJ erred in her decision to restrict Plaintiff's counsel from asking the vocational expert about the temperament for furniture retail consultants, the position the expert testified Claimant could work in. (ECF No. 10, PageID #: 700–01). To support his argument, he refers to other cases where the ALJs have discussed temperament with the vocational expert. (ECF No. 10, PageID #: 701 (citing *Brown v. Astrue*, No. 1:10cv305, 2011 WL 2470232, at *6 (N.D. Ohio June 20, 2011); *Huddleston v. Comm'r of Soc. Sec.*, No. 1:12cv623, 2013 WL 351257, at *3 (N.D. Ohio Jan. 11, 2013); *Woollard v. Comm'r of Soc. Sec.*, No. 5:14cv206, 2015 WL 630850, at *7 (N.D. Ohio Feb. 13, 2015))). Claimant also alleges the ALJ erred in finding that 14,000 jobs in the national economy was a significant number to meet the burden at Step Five of the disability analysis. (ECF No. 10, PageID #: 701–02 (citing *Tapp v. Sec'y of HHS*, No. 1:90cv1214, 1991 WL 426310 (N.D. Ohio July 18, 1991); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x. 574 (6th Cir. 2009); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016); *Smathers v. Comm'r of Soc. Sec.*, No. 2:14cv500, 2015 WL 401017, at *5 (S.D. Ohio Jan. 28, 2015), *report and recommendation adopted* 2015 WL 5568324 (S.D. Ohio Sept. 22, 2015))).[1] Claimant argues that later cases found that the number of jobs in *Taskila* and *Nejat* referred to "regional or local and not national [jobs] and so were insignificant." (ECF No. 10, PageID #: 701–02). Further, Claimant states that *Smathers* noted that there was only one occupation in *Nejat*, so the Step Five burden was not met. (ECF No. 10, PageID #: 702).

---

[1] Claimant also cites a number of cases outside the district to show varying numbers of jobs that were considered insignificant for the purposes of Step Five. (*See* ECF No. 10, PageID #: 702 (citing *Isaac v. Saul*, 2:20cv11573, 2021 WL 4770122, at *6–8 (E.D. Mich. Apr. 29, 2021), *report and recommendation adopted* 2021 WL 4167211 (E.D. Mich. Sept. 14, 2021) (citing *Troyer v. Comm'r of Soc. Sec.*, No. 1:12cv759, 2013 WL 4954883, at *5 (W.D. Mich. Sept. 12, 2013)); *Malone v. Astrue*, No. 3:10cv1137, 2012 WL 1078932, at *6 (M.D. Tenn. Mar. 30, 2012); *Mackins v. Astrue*, 655 F. Supp. 2d 770 (W.D. Ky. 2009); *John C. v. Saul*, No. 4:19-cv-04111-SLD-JEH, 2021 WL 794780, at *5 (C.D. Ill. Mar. 2, 2021))).

The Commissioner contends that Claimant has not shown that the ALJ was required to obtain testimony from the vocational expert about a job's temperament and thus erred in failing to do so. (ECF No. 11, PageID #: 728 (referencing Social Security Emergency Message EM-21065 which states that the SSA does not consider temperaments because temperament ratings "do not represent functional requirements for work because they reflect the personal interests, natural abilities, and personality" of claimants rather than functional abilities)). The Commissioner also argues that substantial evidence supports the ALJ's finding that 14,000 jobs in the national economy was a significant number. (ECF No. 11, PageID #: 726). The Commissioner specifically points to *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988), a case that provides factors for determining if a specific number of jobs is significant, arguing that the *Hall* factors support the ALJ's finding. (ECF No. 11, PageID #: 726). The Commissioner also challenges Claimant's interpretation of *Taskila* and *Nejat*, arguing that they clearly refer to national jobs, not regional or local jobs as Claimant argues. (ECF No. 11, PageID #: 727). Likewise, the Commissioner argues that neither *Tapp* nor *Smathers* apply here because *Tapp* is a "single, non-binding opinion" that does not review the *Hall* factors, and *Smathers* found that 8,250 jobs were insignificant, and there are 14,000 jobs here. (ECF No. 11, PageID #: 727).

In his reply brief, Claimant merely challenges the Commissioner's reference to the Social Security Emergency Message since it was sent seven months after the ALJ's decision. (ECF No. 13, PageID #: 746). He argues it constitutes a post hoc rationalization to justify the ALJ's exclusion of temperament testimony. (ECF No. 13, PageID #: 746).

As an initial matter, the Court agrees that Claimant has failed to establish that the ALJ is required to discuss job temperament and erred in failing to do so. Claimant does not cite any statute or Social Security Ruling to support his argument and only cited cases where job temperament

16

happened to be discussed at a hearing, rather than decisions requiring ALJs to discuss temperament. (*See* ECF No. 10, PageID #: 701). Finally, an ALJ has the discretion to direct an administrative hearing, so this ALJ did not err in limiting the vocational expert's testimony to issues other than temperament. *See* 42 U.S.C.A. § 1009(a)(1) ("The Commissioner of Social Security may, on the Commissioner of Social Security's own motion, hold such hearings and conduct such investigations and other proceedings as the Commissioner of Social Security deems necessary or proper for the administration of this subchapter."). Thus, the Court finds that the ALJ did not err in failing to discuss job temperament at the administrative hearing.[2]

The Court now turns to Claimant's second argument, that the ALJ improperly found 14,000 jobs in the national economy to be significant. This claim requires the Court to review Step Five in the disability analysis framework.

If an ALJ's analysis reaches Step Five, the claimant has established they cannot complete past relevant work. *See* § 404.1520(a)(4)(i)–(v). Accordingly, the burden shifts to the Commissioner to demonstrate that there are still a "significant number" of jobs in the national economy that the claimant is capable of working. *See id.*; *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("[A]t step five of the inquiry . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity[.]"). "There is no 'magic number' that qualifies as 'significant' for purposes of satisfying this prong of the disability inquiry." *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) (quoting *Hall*, 837 F.2d at 275). Instead, a "significant" number is determined by

---

[2] The Court need not reference or discuss the Emergency Message the Commissioner submitted in support of its argument as the Court finds other reasons why Claimant's argument fails. The Court also notes that the message cited no binding authority in its discussion of temperaments and was published many months after the ALJ's decision.

the facts of the case and common sense. *See Hall*, 837 F.2d at 275. *Hall* indicates several factors courts may review in making such a determination:

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

*Id.* Indeed, because this is a fact-specific inquiry, courts have found that varying numbers of jobs across local, state, and national regions are "significant" for the purposes of Step Five. *See Stewart v. Sullivan*, No. 89–6242, 1990 WL 75248, at *3–4 (6th Cir. June 6, 1990) (finding that 400,000 national jobs and 125 local jobs was "significant"); *Hall*, 837 F.2d at 275 (finding that the trial court erred in granting summary judgment for the plaintiff on a Step Five challenge when 1,350 jobs existed in the local economy); *Taskila*, 819 F.3d at 906 (holding that the ALJ did not commit reversible error in finding that 200 local jobs and 6,000 national jobs were "significant"); *Nejat*, 359 F. App'x at 579 (2,000 jobs significant).

Here, the vocational expert testified that while Claimant could no longer perform his past work with the ALJ's RFC, he could still work as a furniture rental consultant. (*See* ECF No. 7, PageID #: 79). The expert testified that there are 14,000 jobs at the light, unskilled level of work for this position. (ECF No. 7, PageID #: 79).[3]

The ALJ relied on the vocational expert's testimony to find that 14,000 jobs was a "significant" number for the purposes of Step Five and that the Commissioner had met their burden

---

[3] The vocational expert did not specify whether these were national, state, or local jobs. However, in the ALJ's decision, it is clear the ALJ interpreted this number as national.

of determining that Claimant was not disabled. (*See* ECF No. 7, PageID #: 51–52). Moreover, under the *Hall* factors—which the ALJ was not required to apply—this finding was reasonable. Claimant was found to have an RFC of light work and Claimant has not challenged the vocational expert's testimony or qualifications. (*See also* ECF No. 7, PageID #: 77 (Claimant's counsel telling the ALJ she had no objections to the vocational expert's qualifications)). The ALJ noted in her RFC analysis that Claimant could still drive, and Claimant has not alleged he is incapable to driving to a position or that the jobs are geographically isolated. (*See* ECF No. 7, PageID #: 49 (noting that Claimant testified he drives)). Further, as 14,000 jobs is well above the "significant" numbers of other courts, this Court finds that it was not unreasonable for the ALJ to find this number significant for the purposes of Step Five. *See Taskila*, 819 F.3d at 906 (6,000 national jobs and 200 local jobs were significant); *Nejat*, 359 F. App'x at 578–79 (2,000 national jobs).[4] Accordingly, the Court finds that substantial evidence supports the ALJ's finding that there were a significant number of jobs in the national economy.

Claimant's references to various cases outside this district are only marginally relevant to the instant case since this is a fact-specific inquiry that depends upon the unique circumstances of the case. *See Hall*, 837 F.2d at 275. Thus, this Court is not bound by other courts' specific findings related to their unique factual circumstances—especially courts outside this district and circuit. Further, Claimant's reliance on *Tapp* does not establish his argument. (ECF No. 10, PageID #: 699–700). In *Tapp*, the court held that a few hundred regional jobs, 2,000 state jobs, and 30,000 national jobs constituted an insignificant number but failed to explain why. *See* 1991 WL 426310,

---

[4] Claimant's argument that *Taskila* and *Nejat* did not analyze national jobs is unfounded. A reading of either case establishes that these cases did in fact consider national job estimates.

at *1.[5] The opinion is two pages, and as discussed above, because of the unique facts of every case, the circumstances of the case will dictate varying "significant" numbers. *See Hall*, 837 F.2d at 275.[6] As substantial evidence supports this ALJ's finding that 14,000 jobs was a significant number and the finding does not conflict with Sixth Circuit precedent, this Court sees no reason to disturb the ALJ's ultimate disability finding.

> **3.  The ALJ Properly Evaluated Claimant's Subjective Complaints and Substantial Evidence Supports her RFC**

Claimant finally argues that the ALJ erred in finding that the record did not support Claimant's allegations of pain and other symptoms.[7] (ECF No. 10, PageID #: 708). He claims this was a harmful error as the "medical documentation and reported pain precluded [him] from standing/walking the requisite time to perform work at the light exertion level [and] he should have been found disabled." (ECF No. 10, PageID #: 708). Claimant also alleges the ALJ failed to properly detail his testimony and articulate "any supportable rationale beyond the boilerplate

---

[5] The court simply noted that it found the numbers insignificant "[f]or the reasons set out in this Court's ruling in *Crabtree v. Secretary of Health and Human Services*, Case No. 5:89CV2081 (February 14, 1981) [1991 CCH UNEMPLOYMENT INSURANCE REPORTS, ¶ 15,891A]." 1991 WL 426310, at *1. However, this is an unpublished opinion from 1981 that the Court cannot find. Thus, this Court cannot ascertain the *Tapp* court's rationale for finding the number of jobs insignificant, and Claimant had failed to provide any insight into the matter.

[6] To the extent that Clamant seeks to argue a single job cannot be found in significant numbers, this argument fails. The two cases Claimant cited in support of this passing argument were *Tapp* and *Smathers*, however, the courts in these cases did not find that the numbers were insignificant solely because they related to one job. In *Tapp*, the court did not indicate that it was rejecting the number because it related to one job. 1991 WL 426310, at *1. Further, in *Smathers*, the court rejected the number for several reasons, including that fact that it was unclear what the actual number was. 2015 WL 401017, at *6. Thus, the court did not reject the number solely because the vocational expert recommended only one job.

[7] While Claimant's argument largely centers around his allegations of pain, the headline of this issue in his brief challenges the ALJ's consideration of his "symptoms, including pain," rather than pain exclusively. (*See* ECF No. 10, PageID #: 703). Thus, this Court has reviewed all the ALJ's references to inconsistencies between the record and both physical and mental health symptoms, rather than pain alone.

paragraph" for why the ALJ discounted his testimony. (ECF No. 10, PageID #: 709 (citing *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015))). Claimant argues that this violated Social Security Ruling ("SSR") 16-3p and *Rogers*. (ECF No. 10, PageID #: 709 (citing 486 F. 3d at 249)). Finally, Claimant argues the ALJ failed to build a logical bridge between the evidence documenting his health and the ultimate decision to deny benefits. (ECF No. 10, PageID #: 710).

The Commissioner responds that the ALJ properly evaluated Claimant's subjective pain in accordance with § 404.1529(c) and SSR 16-3p. (ECF No. 11, PageID #: 729). Contrary to Claimant's allegation that the ALJ rejected his complaints outright, the Commissioner points out that the ALJ simply rejecting Claimant's allegations of *disabling* symptoms. (ECF No. 11, PageID #: 730, 732). The Commissioner also argues that the RFC of light work was consistent with the record, including the expert recommendations, and that Claimant improperly asks this Court to reweigh the evidence. (ECF No. 11, PageID #: 730–31, 732).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that

the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3p, 2017 WL 5180304. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted by* 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Claimant states that the ALJ "did not comply with the requirement of SSR 16-3p" and "failed to [provide] specific reasons for [her] finding on credibility," contrary to *Rogers*. (ECF No. 10, PageID #: 709). The ALJ specified Claimant's subjective complaints:

> At the hearing, the claimant testified that he cannot work primarily due to back pain that prevents him from being on his feet, and the effects of a stroke. He indicated that he is unable to stand for more than 10 minutes without experiencing pain, and he tried various treatment methods such as epidural injections, but they did not help much. According to the claimant, he is currently receiving pain management services, his physician recommended spinal surgery, and his stroke made things worse for him, including affecting his right leg. He further alleged that he occasionally uses a cane, sometimes loses his balance, has no mobility in his right arm, and has a cyst on his left wrist that must be drained. The claimant stated that he can lift five to 10 pounds, but will suffer for the next two days after lifting, has problems with sitting such as being unable to get comfortable, and has trouble with falling and staying asleep at night. Regarding activities of daily living, the claimant testified that he currently lives with his father and fiancé, and he performed some

22

> gardening in the summer, but his fiancé and father did the planting, and has been unable to engage in hobbies such as fishing for the past two years (hearing testimony).

(ECF No. 7, PageID #: 47–48). The ALJ also provided a unified statement of reasons for discounting credibility:

> The claimant's allegations are determined to be less than fully consistent with the evidence. The nature and degree of pain and functional limitations alleged by the claimant is not supported by medical and non-medical sources. Diagnostic test results and physical examination findings have been largely unremarkable, and the claimant had a relatively conservative treatment history for his physical health impairments since the alleged onset date, with conservative treatment measures such as epidural injections and pain medications. For example, a physical examination performed in 2020 revealed that the claimant was alert and oriented to all spheres, in no acute distress, his gait was grossly non-antalgic, there was tenderness in the paraspinal muscles, a facet loading test was positive bilaterally, straight leg raise testing was consistent with femoral stretch and L4 dermatome on the left, and he could rise from the seated to standing position without difficulty (Exhibit 16F, pg. 4).
>
> Regarding the consistency of the claimant's mental health allegations, he had a very limited treatment history since the allege onset date, without evidence of psychiatric hospitalization in the record, and told Dr. Haaga that he was not currently taking any psychotropic medications or receiving counseling services, nor was he interested in therapy. Such absence of documentation of ongoing treatment is inconsistent, and it seriously undermines allegations of disabling, or even severe, limitations of function, lasting twelve months in duration, and despite treatment (20 CFR 404.1520(a)(4)(ii) and 404.1509). Additionally, the claimant reported mostly mild to moderate level symptoms during his psychological consultative examination with Dr. Haaga, without evidence of hallucinations, delusions, obsessions, compulsions, cognitive disorder, current suicidal/homicidal ideation, or other serious issues (Exhibit 9F). Thus, there are no indications in the medical record of limitations beyond the performance of light level work with the non-exertional restrictions listed above.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the

23

claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(ECF No. 7, PageID #: 49–50).

The ALJ reviewed and discussed Claimant's physical impairments and symptoms in her RFC analysis. (ECF No. 7, PageID #: 48, 50). She noted Claimant had a history of obesity, degenerative disc disease and arthritis of the lumbar spine, lumber neuritis, status post stroke with right hemiparesis, and hypertension. (ECF No. 7, PageID #: 48). She also reviewed records from June, July, and September 2020 documenting treatment for low back pain, including a physical examination, EMG study, and MRI. (ECF No. 7, PageID #: 48). The ALJ noted that the June 2020 provider observed Claimant could rise from a seated to standing position without difficulty, and the ALJ also considered that the EMG demonstrated only "mildly abnormal" results. (ECF No. 7, PageID #: 48). The ALJ also considered the opinions of the state agency medical consultants who all recommended light work. (ECF No. 7, PageID #: 50 (citing ECF No. 7, PageID #: 113, 123, 134, 143)).

In discrediting the nature and degree of Claimant's physical allegations of pain, the ALJ pointed to "largely unremarkable" test results and physical examinations, as well as "conservative" treatment, including epidural injections and pain medications, for his physical impairments since the onset date. (ECF No. 7, PageID #: 49). The ALJ specifically referenced the June 18, 2020 appointment record which revealed Claimant to have a non-antalgic walk and no difficulty standing. (ECF No. 7, PageID #: 49 (citing ECF No. 7, PageID #: 659)). Upon review of this record, the Court sees that the provider noted that Claimant "demonstrate[d] no pain behavior." (ECF No. 7, PageID #: 659). Based on these facts, the ALJ found that Claimant's subjective

allegations of disabling pain were not entirely consistent with the record, and substantial evidence supports this finding.

The ALJ also discussed Claimant's mental impairments and symptoms. (ECF No. 7, PageID #: 48–49). She noted that Claimant had mental impairments including adjustment disorder with mixed anxiety and depressed mood and neurocognitive disorder. (ECF No. 7, PageID #: 48). The ALJ reviewed a December 2019 record from a mental health consultation and observed that Claimant admitted he did not need to see a therapist and had never seen a therapist or been hospitalized for mental health. (ECF No. 7, PageID #: 48–49). The provider ultimately found, and the ALJ noted, that Claimant had "adequate grooming and hygiene, he was cooperative, his interaction with [the provider] was adequate, his speech was 100 percent understandable, and he needed to be redirected at times, but his thought processes were logical, organized, coherent, and rambling." (ECF No. 7, PageID #: 49). The ALJ also observed that the provider noted Claimant was "alert and oriented to all spheres, there was no evidence of hallucinations or delusions, his attention and concentration were adequate, and he was likely functioning in the average range of intelligence for his age." (ECF No. 7, PageID #: 49). Finally, the record noted that Claimant denied suicidal ideation and motor manifestations of anxiety. (ECF No. 7, PageID #: 49). The ALJ also reviewed and adopted the state agency psychological consultants' mental health recommendations. (ECF No. 7, PageID #: 50).

Based on this evidence, the ALJ found that Claimant's testimony of mental health symptoms was inconsistent with the record for several reasons. (*See* ECF No. 7, PageID #: 49). First, the ALJ noted that Claimant obtained very limited mental health treatment since the onset date and had no record of psychiatric hospitalization. (ECF No. 7, PageID #: 49). Next, the ALJ observed that Claimant refused to accept treatment for his mental health, including counseling

services, psychiatric mediations, and therapy. (ECF No. 7, PageID #: 49). Finally, Claimant's alleged mental health symptoms did not include severe symptoms such as hallucinations, delusions, obsessions, compulsions, cognitive disorder, or suicidal ideation. (ECF No. 7, PageID #: 49). The ALJ found that such a record "undermines allegations of disabling, or even severe, limitations of function . . . ." (ECF No. 7, PageID #: 49). Thus, the Court finds that substantial evidence also supports the ALJ's findings discrediting the full extent of the Claimant's mental health allegations.[8]

In his brief, Claimant points to various facts and testimony he believes prove his subjective complaints were consistent with the record. (*See* ECF No. 10, PageID #: 703–06). But this Court cannot reweigh the evidence and must instead apply the substantial evidence standard. *See Winn*, 615 F. App'x at 320. Moreover, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). As substantial evidence supports the ALJ's finding, this Court will not disturb the decision.

Lastly, Claimant also makes a cursory argument that the ALJ failed to craft a logical bridge between the record and its subjective complaint finding in the final pages of his brief. (*See* ECF

---

[8] The Court further notes that the ALJ's explanation for rejecting Claimant's subjective physical and mental allegations was not a "boilerplate" template as Claimant argues. (*See* ECF No. 10, PageID #: 709 (citing *Cox*, 615 F. App'x at 260)). For her mental and physical inconsistency findings, the ALJ cited specific records and provided multiple reasons why Claimant's testimony was inconsistent with the record. (*See* ECF No. 7, PageID #: 49). This is different from the "boilerplate" rationale the *Cox* court criticized where the ALJ's only explanation for her finding was as follows: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." 615 F. App'x at 259–60.

No. 10, PageID #: 710). However, as discussed above, the Court can follow the ALJ's reasoning for her subjective complaint finding, so the Court does not find this argument persuasive.

The ALJ's decision satisfies the Court that the ALJ considered all of the relevant evidence and that a reasonable mind might accept that evidence as adequate to support the ALJ's finding discounting Claimant's subjective testimony. There exists, therefore, no compelling reason for the Court to disturb that finding. *Cross,* 373 F. Supp. 2d at 732.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Claimant benefits.

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

Dated: January 31, 2023